Kirte M. Kinser (Texas State Bar No. 11489650)
FISHMAN JACKSON PLLC
13155 Noel Road, Suite 700
Dallas, Texas 75240
Phone: (972) 419-5520
Fax: (972) 419-5501
Email: kkinser@fishmanjackson.com

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| MOUNT, SPELMAN & FINGERMAN, P.C., | Civil Action No. |
| Plaintiff, | |
| vs. | JURY |
| GEOTAG, INC., JOHN W. VEENSTRA AND ELIZABETH A. MORGAN, | COMPLAINT AND JURY DEMAND |
| Defendants. | |

COMPLAINT AND JURY DEMAND                                              1

# COMPLAINT

Plaintiff Mount, Spelman & Fingerman, P.C. ("MSF") alleges as follows:

**Parties**

1. MSF is a California professional corporation with its principal place of business at 333 West San Carlos Street, San Jose, CA 95110. Accordingly, MSF is a citizen of the State of California. MSF does business in the Eastern District of Texas.

2. GeoTag, Inc. ("GeoTag") is a Texas corporation with its principal place of business at 2591 Dallas Parkway, Suite 505, Frisco, TX 75034. Accordingly, GeoTag is a citizen of the State of Texas. GeoTag does business in the Eastern District of Texas.

3. John W. Veenstra ("Mr. Veenstra") and Elizabeth A. Morgan ("Ms. Morgan") hold the positions of Chief Executive Officer and Chief Legal Officer of GeoTag, respectively, and, either directly or by means of intermediate holding companies, are substantial majority shareholders in GeoTag. They each are citizens of the State of Texas and reside within the Eastern District of Texas.

**Jurisdiction and Venue**

5. This action arises out of common law as applied in the State of Texas.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

7. This Court has personal jurisdiction over GeoTag as its principal place of business is in the Eastern District of Texas.

8. This Court has personal jurisdiction over Mr. Veenstra and Ms. Morgan as they reside within the Eastern District of Texas.

COMPLAINT AND JURY DEMAND                                                                  2

9.      Venue is appropriate in the Eastern District of Texas under 28 U.S.C. § 1391. GeoTag, Mr. Veenstra and Ms. Morgan all reside in this District.  The fee agreement at issue in this Action was executed in this District and pertains to lawsuits against over 350 defendants currently or previously pending in this District. Performance under the fee agreement at issue between the parties was all, or substantially all, within this District. This court has an essential interest in the proceedings initiated by this Complaint, as Plaintiff's claims relate to more than 350 patent cases pending or previously pending in this District.  Moreover, various pleadings filed with this Court in cases with this Court, are at issue in this litigation.

**Facts Supporting the Claim**

**Defendants' Obtain Control of '474 Patent**

10.     On July 27, 1999, U.S. Patent No. 5,930,474 ("the '474 Patent") was issued to Peter D. Dunworth, Mr. Veenstra and Joan Nagelkirk ("Ms. Nagelkirk").  Upon information and belief, Mr. Veenstra and Ms. Morgan set about upon a scheme to deprive Ms. Nagelkirk, who was at the time Mr. Veenstra's wife, of her ownership interest.

11.     As part of the scheme, the '474 Patent was subject to a series of national and international assignments which ultimately led to the assignment of all rights to GeoTag, which is controlled by Mr. Veenstra and Ms. Morgan, who are now married to each other.  These transfers show a pattern of transferring the patent to entities in certain jurisdictions whose laws would make it difficult for creditors to pursue claims.

12.     Specifically, the '474 Patent was first assigned to Z Land LLC, of Santa Ana, California.  Z Land LLC then assigned its rights to Cityhub.com, Inc, a Delaware corporation, which in turn assigned its rights to Labranza Est, a Liechtenstein trust.  Labranza Est then assigned all rights to Yellowone Investments Limited, a United Kingdom private limited

COMPLAINT AND JURY DEMAND                                                                                                  3

company, which later became Geomas (International) Limited.  Geomas then assigned its rights to M2 Global, Ltd., an Antigua corporation that later became Ubixo Limited, which assigned rights to Ubixo Inc.

13.  Ubixo Inc later became GeoTag, Inc., a Delaware corporation, which via merger then became the defendant herein, GeoTag, Inc., a Texas corporation, of which Mr. Veenstra and Ms. Morgan own by means of various holding companies, a controlling interest in a substantial majority of the stock.  Mr. Veenstra. Ms. Morgan and GeoTag, seeking to enforce the '474 Patent, then pursued patent infringement litigation in the Eastern District of Texas against more than 350 companies (the "Texas Litigation").

14.  The acts and omissions of Mr. Veenstra and Ms. Morgan, as alleged in this Complaint, were made individually, as co-conspirators and on behalf of GeoTag.  Furthermore, MSF is informed and believes that Mr. Veenstra and Ms. Morgan, individually and collectively, are the alter ego of GeoTag.

**Defendants Engage in Pattern of Improper Conduct**

15.  Upon information and belief, Defendants have engaged in a pattern of wrongfully obtaining the time, talent and treasure of others in order to obtain financial benefit in connection with the '474 Patent. Specifically, Mr. Veenstra's former wife and one of the original owners of the '474 Patent, Ms. Nagelkirk, sets forth the Defendants' actions in secreting assets and rights associated with the '474 Patent in *Cityhub.com Inc v. Veenstra, Morgan and Geomas, et al.*, Civil Action No. 2:2009cv00143, which was filed in this District.  In that action, Cityhub.com Inc. accuses Mr. Veenstra, its former director, of breaching his fiduciary duty by fraudulently dissolving the company and assigning the '474 Patent to Geomas (International) Limited, which

COMPLAINT AND JURY DEMAND                                                                                          4

he controlled, without the shareholders' consent, and by obtaining settlements without the shareholders' knowledge.

16. That case ultimately settled and, according to publicly known information Cityhub.com Inc received entitlement to one-sixth of net revenues generated under the '474 Patent, and an advance payment of $1,500,000.00.

17. In addition, again based upon publicly available information, Mr. Veenstra and Ms. Morgan and their predecessors in interest secured investments through financier Jason Woodruff Galanis ("Mr. Galanis"), in relation to a $20,000,000.00 financing.

18. In the Texas Litigation, GeoTag sued more than 350 defendants in various lawsuits. GeoTag also counterclaimed for infringement of the '474 Patent in declaratory relief litigation with Microsoft Corporation and Google, Inc. in the District of Delaware (the "Delaware Litigation").

19. GeoTag has been represented in the Texas Litigation by a long string of counsel. Originally, Geotag was represented by Friedman, Suder & Cooke, which was then replaced by Collins, Edmonds & Pogorzelski, PLLC. Next, Geotag was represented by the Ni Law Firm. Geotag's next set of lawyers, Buether, Joe and Carpenter, LLC and the Law Offices of Young Pickett, were summarily discharged on August 27, 2012, shortly before the Markman briefing was due. Since GeoTag's improper termination of MSF, as described below, Defendants also dismissed two other law firms. Upon information and belief, in many, if not all, of agreements with service providers, GeoTag failed to comply with the terms of their respective fee agreements.

**Defendants Retain MSF Without Intent to Perform Under Fee Agreement**

20. In September 2012, Defendants solicited MSF to take over as trial counsel in the Texas Litigation on a contingency fee basis. The arrangement proposed by Defendants was for MSF to act solely as trial counsel, for which MSF would be entitled to receive a contingency fee upon the resolution, whether by settlement, judgment or otherwise, of each of the separate lawsuits involved in the Texas Litigation. Other counsel was to be engaged to perform as "litigation counsel" and address other aspects of the Texas Litigation. Still other lawyers were engaged to handle the Delaware Litigation. Settlement negotiations were handled largely by Defendants. MSF's role for GeoTag was to act as trial counsel in the Texas Litigation.

21. In connection with their efforts to convince MSF to accept the representation of GeoTag, Defendants made certain representations which later were discovered to be false.

22. Defendants also represented that MSF would not be prejudiced in the earning of its fee in the Texas Litigation by any activity or settlements reached in the Delaware Litigation. It was contemplated that certain claims in the Texas Litigation, upon which MSF's fees would be calculated, might need to be sacrificed in whole or in part for the benefit of the Delaware Litigation; therefore it was critical to MSF that it be protected in such instances. Defendants assured MSF that if any action was taken in the Delaware Litigation that caused the potential recovery in the Texas Litigation to diminish, that MSF would be proportionally compensated.

COMPLAINT AND JURY DEMAND                                                                          6

**The Fee Agreement**

23. On September 21, 2012, in reliance upon the Defendants' promises and representations, MSF entered into a certain written fee agreement with GeoTag (the "Fee Agreement"). The Fee Agreement is a valid and enforceable contract.

24. The Fee Agreement, among other things, provides as follows:

    a. MSF was to represent GeoTag in the Texas Litigation as trial counsel;

    b. MSF's compensation would be calculated based upon a percentage of the Net Recovery (as defined in the Fee Agreement) from any settlement, judgment or other resolution of individual cases in the Texas Litigation;

    c. In the event of a recovery in any given case, any costs associated with that case would be deducted from any recovery;

    d. Proportional compensation would be paid to MSF for any agreement to sacrifice rights being pursued in the Texas Litigation for the benefit of the Delaware Litigation;

    e. GeoTag was to respond promptly to any inquiries or communications from MSF, cooperate fully and keep MSF informed of any developments or progress in any of the cases, including giving prompt notice to MSF of any settlement proposals, settlements or other resolution reached in any of the individual cases, and be truthful at all times in its dealings with MSF;

    f. GeoTag is to make timely and full payment to MSF of its fee as earned;

    g. In the event of MSF's termination, it would be owed the greater of the contingency fees owed or reasonable attorneys' fees; and

     h.    MSF was promised a lien against any of the proceeds relating to any of the cases in the Texas Litigation.

25. Through November 8, 2013, MSF performed its duties under the Fee Agreement. GeoTag, however, did not. Defendants entered into the Fee Agreement with the present intention of not complying with its terms. GeoTag John Veenstra and Elizabeth Morgan and GeoTag all violated the Fee Agreement and engaged in a pattern of deceit, all with the intention of injuring MSF.

**GeoTag Misallocated Costs and Failed to Pay Costs and MSF**

26. On April 15, 2013, because of MSF efforts, GeoTag obtained a significant settlement in the Texas Litigation. MSF requested that its contingency fee be paid in accordance with the terms of the Fee Agreement. Despite clear examples within the Fee Agreement showing how costs would be allocated and how fees would be shared as each case was settled, GeoTag took the untenable position that no fee was to be paid in any amount until all future costs of every one of the remaining Texas Litigation cases were paid. To compound the problem, Defendants did not actually pay many of the costs, including expert witness fees. In an effort to resolve the controversy and in a show of good faith, however, MSF agreed to an Interim Solution dated April 26, 2013 (the "Interim Solution"), which was signed by GeoTag and Litigation Counsel, the latter of which also was to be paid a contingent fee based upon individual settlements. The Interim Solution, among other things, provided for a partial payment to MSF while allowing MSF to reserve all of its rights to seek full payment under the Fee Agreement.

27. The Interim Solution, by temporarily allowing GeoTag to retain settlement funds that were due and owing to MSF, had the effect of causing MSF to finance costs in substantial part, even though the Fee Agreement clearly provides that GeoTag was to advance all costs.

**GeoTag Failed to Pay MSF for Texas Concessions for the Benefit of Delaware Litigation**

28.     On May 9th, 2013 GeoTag and Microsoft Corporation reached a stipulated judgment and covenant not to sue in the Delaware Litigation, which had the effect of fully or partially dismissing certain cases in the Texas Litigation.  This settlement triggered a duty to proportionally compensate MSF under the terms of the Fee Agreement.

29.     On May 30th, 2013 GeoTag and Google, Inc. reached a stipulated judgment and covenant not to sue in the Delaware Litigation, which had the effect of fully or partially dismissing certain cases in Texas Litigation.  This settlement triggered a duty to proportionally compensate MSF under the terms of the Fee Agreement.

30.     The described stipulated judgments and covenants not sue in the Delaware Litigation triggered the provisions in the Fee Agreement calling for proportionate compensation to MSF. MSF demanded such compensation, but Defendants refused.  Instead, Mr. Veenstra indicated that Mr. Tom Clark ("Mr. Clark") would address the issue with MSF on behalf of Defendants.  In fact, however, Mr. Clark was never willing to discuss the issue and constantly put off the topic. Mr. Clark refused to take calls from MSF for at least a six-week period.  When MSF was able to raise business issues with him, Mr. Clark changed the subject.

31.     To date, all of this effort to sacrifice Texas proceedings for the benefit of Delaware has been without any proportional compensation to MSF.

**Defendants Fraudulently Hid or Lied About the Existence and Amount of Settlements**

32.     Defendants received many settlement proposals, reached settlement agreements and obtained consideration to the exclusion of MSF in several of the Texas Litigation cases. MSF requested information regarding the settlement proposals, settlements, and settlement amounts, but either received incomplete or inaccurate information, or the existence and amount

of the settlements were hidden completely by GeoTag. MSF demanded meetings to discuss fees owed and payment of fees owed, but GeoTag refused.

33. To further frustrate MSF's efforts to obtain truthful and complete information about settlements, to which it was entitled under the terms of the Fee Agreement, Defendants engaged separate counsel, the identity of whom was also hidden from MSF, to negotiate settlements. MSF stood ready, able and willing at all times to continue to aid in all settlement efforts and close the matters in a timely manner. MSF informed GeoTag of this ability, but GeoTag continued to utilize separate counsel in an effort to deny MSF its just compensation.

34. One known example of GeoTag's deception concerning settlements occurred on September 16, 2013 when MSF received a call from James S. Blackburn ("Mr. Blackburn"), who was acting as counsel for a group of defendants. Mr. Blackburn informed Mr. Mount that a group settlement had been reached and that he wanted confirmation that a stipulation requesting that this Court (in the department of Judge Gilstrap) would enter an order amending the controlling schedule as it related to these settling defendants. Defendants had failed to disclose the existence of this group settlement proposal and their acceptance of a proposal, which settled three (3) lawsuits and created a significant settlement to that date in the Texas Litigation.

35. When MSF learned that GeoTag reached this group settlement, Dan Mount attempted to aid in finalizing the agreement and related dismissals. These attempts were rebuffed by Defendants. In particular, Mr. Veenstra who indicated that additional counsel had been hired by GeoTag to finalize the settlement on the meritless assertion that such hiring was done to avoid "overburdening" MSF. MSF had, and informed GeoTag that it had, ample capacity to staff the settlement effort. However, Mr. Veenstra insisted that new counsel become involved. He refused however to identify this counsel. To only exacerbate GeoTag's breach of

the Fee Agreement, GeoTag then suggested that the cost of the additional counsel would be assessed as "costs" against MSF's fees. When MSF objected on the basis that such deduction was not permitted under the Fee Agreement, Defendants represented to MSF that notwithstanding new counsel all fees would be properly paid to MSF. MSF continued to staff the case at a high-level and continued to work extensively for several months in light of its reliance on this series of lies. However, GeoTag's representation turned out to be false, as GeoTag has improperly withheld fees owing to MSF on the improper basis of GeoTag paying the additional counsel for its fees.

36. In addition, MSF is informed and now believes that extra counsel was retained to control the timing of settlements and the distribution of settlement proceeds with an effort to minimize sharing those proceeds with MSF. Finalization of certain settlements appear to have been delayed until after GeoTag could terminate, albeit improperly, MSF, as more fully described below, thus further denying MSF its proper fees under the terms of the Fee Agreement.

37. MSF has never been paid its fees in connection with this settlement.

38. MSF is informed and believes that Defendants acted in other ways to prevent the occurrences of conditions precedent to payments to MSF by delaying the execution of settlement agreements and the receipt of settlement amounts, and by filing requests with the Court for orders to extend stays of deadlines. Indeed, unbeknownst to MSF, some of these requests contained false statements. One such false request was purportedly filed with the authority of MSF when in fact no such authority for filing was granted. Another request falsely represented that additional time was needed to finalize "terms related to the settlement and patent license agreement" when the agreement had actually already been reached.

COMPLAINT AND JURY DEMAND                                                                                                         11

39.     Moreover, attorneys for GeoTag, who themselves refused to appear before the Court, directed that these filings be made, not because settlements could not be timely finalized as represented to the Court, but rather because settlements were being purposefully delayed by Defendants in order to attempt to deny fees to MSF. Even if the settlement agreements were not actually created and signed by the date of MSF's termination, certainly all of the substantive work that resulted in the settlements had been completed by then.

**Defendants Hid More Settlements**

40.     On November 6, 2013, Mr. Veenstra, on behalf of all Defendants, admitted that settlements had been reached as to a large number of the entire collection of Texas Litigation defendants. As a result, Defendants admitted to settling a larger number of cases. However, GeoTag failed to fully and timely notify MSF of all these settlements as it is obligated under the Fee Agreement.

41.     On the next day, November 7th, it was confirmed that one of the largest remaining defendants in the Texas Litigation had settled as a part of a group settlement. On November 8, 2013, while in Marshall, Texas, Ms. Morgan, on behalf of all Defendants, finally admitted that a group settlement had been reached with an additional number of defendants. Thus, a large number of defendants had agreed to settlements on or before November 8, 2013. Moreover, Defendants fraudulently retained all of MSF's fees owing under the Fee Agreement as to these settlements. Thus, Defendants wrongfully retained possession of fees due MSF.

42.     Further, in light of GeoTag's staffing of independent counsel to control the timing of finalizing settlements, the actual reported settlements to this Court on November 8, 2013, may not reflect the actual number of settlements reached.

**MSF Has Not Been Paid More than $25,000,000.00 in Earned Fees**

43. Based upon the best information available to MSF, and in light of GeoTag's utter failure to be honest with MSF as required by the Fee Agreement and otherwise, MSF calculates that, under the terms of the Fee Agreement, GeoTag is obligated to pay MSF more than $25,000,00.00.

44. On November 18, 2013, MSF made a demand on GeoTag for payment of the compensation due. GeoTag has failed and refused to do so.

**MSF is Not Compensated for Additional Work**

45. As described above, discovery in the Texas Litigation was to be conducted by Litigation Counsel, not MSF. However, Defendants specifically asked MSF to provide additional support in the pretrial discovery efforts beyond the terms of the Fee Agreement. MSF did provide substantial services to GeoTag in conducting significant depositions and other discovery efforts concerning source code and other issues.

46. Although work concerning litigation involving Yellowpages.com was expressly excluded from the Fee Agreement as originally executed, Defendants specifically and expressly instructed MSF to lead the "infringement efforts" in the case againstYellowpages.com LLC. In accordance with Defendants' express instructions, MSF retained an additional expert, aided in preparation of expert reports, created infringement contentions, and managed code production and inspection.

47. The services described in the preceding two paragraphs were rendered at the specific request of Defendants and with the reasonable expectation of compensation. However, despite substantial work by MSF resulting in a significant settlement with Yellowpages.com, Defendants denied that they owed any compensation to MSF, stating that the services were not

covered by the Fee Agreement. The terms of the Fee Agreement were either modified by Defendants' specific request that MSF take on the additional duties, thus entitling MSF to its contingency fee of the net proceeds, or, in the alternative, the services were outside the scope of the Fee Agreement, entitling MSF to an additional fee based upon the reasonable value of the services provided, taking into consideration all appropriate factors, including hours worked and results obtained. The reasonable value of the services provided, before considering escalation for the results obtained, is not less than $640,000.00. No amount of that sum has been paid, despite demand therefore, and there is now due and owing the sum of at least $640,000.00 in addition to the sums owing pursuant to the Fee Agreement.

**Falsified Costs**

48.  As described above, costs incurred directly by GeoTag are not to be deducted from fees to be paid to MSF. But, if such costs are to be deducted, Defendants lied about their existence and amount. Defendants reported costs which were not actually incurred and inflated the amount of other costs.

49.  For example, on October 30, 2013 in Frisco, Texas, Defendants falsely represented that GeoTag incurred over $315,000.00 in costs, which Defendants deducted from MSF's fees. GeoTag actually incurred costs in an amount substantially less than the amount claimed. Aside from the fact that the costs are not to be deducted in any amount, Defendants at the very least fraudulently retained more than $100,000.00 based upon these falsified costs.

**MSF is Fired On Falsified Grounds**

50.  On November 7, 2013, MSF attorneys flew at their expense from California to the Eastern District of Texas to successfully argue the next day, November 8, 2013, on GeoTag's behalf against numerous motions for summary judgment. Prior to MSF attorneys departing

California for the hearing, Defendants falsely represented to MSF that Defendants would meet with MSF after the hearing to discuss a resolution to the dispute over the payment of fees. Instead, Defendants all along intended to fire MSF after receiving the benefit of MSF's attorneys' time, talent and expertise at the hearings.  Instead of meeting with MSF, however, Defendants dispatched their agent, Tom Clark, to deliver a letter of termination ("Termination Lettter") that falsely accused MSF of inadequate representation.  Defendants attempted to disguise their long-standing plans by dating the Termination Letter November 8, 2013, when, in fact, it was prepared no later than November 7.  Clearly, Defendants intended to steal the most able talents of MSF by failing to notify them timely of, and indeed misrepresenting, their intention to fire MSF.  That Defendants waited until after MSF had successfully defended against the numerous, critically important, motions for summary judgment belies that transparent lies about MSF providing unacceptable representation.   Moreover, GeoTag continued, and continues through the filing of this Complaint, to fail to compensate MSF one dime of the more than $25,000,000.00 owed under the terms of the Fee Agreement.

## Plaintiff's Claim

### Count 1:  Breach of Contract

51. MSF incorporates by reference all prior allegations.

52. Defendants have breached the Fee Agreement by failing to pay MSF in accordance with the Fee Agreement.

53. As a consequence, MSF has been damaged in an amount of not less than $25,000,000.00.

### Count 2:  Alternative Count for Quantum Meruit

54.   MSF incorporates by reference all prior allegations.

55.   In the alternative, MSF rendered services for the benefit, at the express request, of Defendants.  Defendants accepted the valuable services from MSF with reasonable notice that MSF expected to be compensated therefore.

56.   As a consequence, MSF is entitled under the theory of quantum meruit to recover the reasonable value of its services.

### Count 3:  Fraud

57.   MSF incorporates by reference all prior allegations.

58.   Defendants fraudulently hid or misrepresented the existence and amount of certain settlements, fraudulently delayed the execution of certain settlement agreements, fraudulently misrepresented the existence and amount of costs and otherwise acted to deprive MSF of the fees rightfully owed under the terms of the Fee Agreement committed fraud.

59.   As a consequence, MSF has been damaged in an amount not less than $25,000,000.00.

### Count 4:  Breach of Contract for Additional Work

60.   MSF incorporates by reference all prior allegations.

61.   MSF is informed and believes, and on that basis alleges, that Defendants breached the contract for the requested work on the yellowpages.com matter.

62.   As a consequence, MSF has been damaged in the additional amount of at least $640,000.00.

COMPLAINT AND JURY DEMAND                                                                                    16

**Count 5:  Additional Count for Quantum Meruit for Additional Work**

63. MSF incorporates by reference all prior allegations.

64. In the alternative, MSF rendered attorney services of a reasonable value of $640,000.00 for the benefit, and at the specific request, of Defendants. Defendants accepted the valuable services from MSF with reasonable notice that MSF expected to be compensated for such services.

65. As a consequence, MSF is entitled to recovery in the alternative in quantum meruit in the additional amount of $640,000.00.

**Count 6: Punitive Damages**

66. MSF incorporates by reference all prior allegations.

67. Defendants' actions and omissions were made fraudulently, with malice or with gross negligence, such to entitle MSF to an award of punitive damages in the amount of $50,000,000,00 or the highest amount permitted by law, against each Defendant.

**Count 7: Attorneys' Fees**

68. MSF incorporates by reference all prior allegations.

69. The Fee Agreement is a written contract calling for the providing of services. The work performed relating to the yellowpages.com matter are either part of the Fee Agreement or constitute a separate claim for services.  MSF is represented by the undersigned attorneys.  MSF presented its claim to Defendants, but Defendants have not made any payment to MSF. Therefore, MSF is entitled to recover its reasonable attorneys' fees from Defendants in an amount to be determined by the evidence, but which is anticipated to be not less than $500,000.00.

**Prayer for Relief**

WHEREFORE, MSF prays that this Court enter judgment in its favor and against each Defendant, jointly and severally, except as noted, as follows:

1. Actual damages;

2. Punitive damages in amount not less than $50,000,000.00 against each Defendant individually, or to the highest extent permitted by law;

3. Attorneys' fees;

4. Pre- and post-judgment interest at the highest lawful rate; and

5. All other and further relief, at law or in equity, to which MSF may show itself justly entitled.

**Demand for Jury Trial**

MSF respectfully demands a jury trial for all issues so triable.

Respectfully submitted,

/s/ Kirte M. Kinser
Kirte M. Kinser
Texas Bar No. 11489650
FISHMAN JACKSON PLLC
13155 Noel Road, Suite 700
Dallas, Texas 75240
(972) 419-5520 telephone
(972) 419-5501 facsimile
kkinser@fishmanjackson.com