# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| MOUNT SPELMAN & FINGERMAN, P.C., <br><br> Plaintiff, <br><br> v. <br><br> GEOTAG, INC., JOHN W. VEENSTRA AND ELIZABETH A. MORGAN, ET AL. <br><br> Defendants. | § § § § § § § § § § § § § | Civil Action No. 2:14-cv-00013 <br><br> **LEAD CASE** |
| GEOTAG, INC., <br><br> Plaintiff, <br><br> v. <br><br> MOUNT SPELMAN & FINGERMAN, P.C., <br><br> Defendant. | § § § § § § § § § § § § § | Civil Action No. 2:14-cv-00558 <br><br> **CONSOLIDATED CASE** |

## MEMORANDUM OPINION AND ORDER

Before the Court is GeoTag, Inc., John W. Veenstra, and Elizabeth A. Morgan's (collectively, GeoTag) Motion to Dismiss Plaintiff's Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). The Plaintiff, Mount Spelman & Fingerman ("MSF") opposes the Motion. For the reasons set forth below, GeoTag's Motion to Dismiss (Dkt. No. 45) is **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND

This is a fee dispute between a law firm and its former client. On September 21, 2012, the law firm of MSF entered into a written fee agreement with GeoTag, Inc. Second Am.

1

Compl. ¶ 15, Dkt. No. 37. This fee agreement (the "Fee Agreement") sought to cover hundreds of potential cases related to GeoTag's enforcement of its patent—U.S. Patent 5,930,474 ("the '474 patent"). *Id.* ¶¶ 8, 12.

GeoTag, Inc. apparently had previously retained at least four other law firms in connection with its attempts to enforce the '474 patent. *Id.* ¶ 13. MSF was apparently aware, when it accepted employment, that GeoTag had previous fee disputes with these other law firms, *Id.* MSF worked on GeoTag's cases until MSF was terminated about one year after signing the Fee Agreement. *Id.* ¶ 42. Believing itself underpaid in violation of the Fee Agreement, MSF filed the present lawsuit.

In filing this lawsuit, MSF has pled various causes of action against GeoTag, Inc. as well as its agents, John Veenstra and Elizabeth Morgan. One of the issues raised at the beginning of the lawsuit concerned MSF's right to assert an attorney's lien over settlements that occurred during MSF's employment and after its termination. *Id.* ¶¶ 71–74. Believing the lien issue to be pressing, both parties urged the Court resolve that issue, which the Court did by way of its October 2, 2014 order in this case. Dkt. No. 64. Accordingly, the issue of a lien will not be addressed here. Instead, the Court addresses the remaining issues in GeoTag's Motion to Dismiss (Dkt. No. 45) relying on the facts outlined in MSF's Second Amended Complaint (Dkt. No. 37).

GeoTag has now filed suits enforcing the '474 patent in at least three distinct waves. In the first wave, GeoTag filed suit against multiple defendants in Texas including Yellowpages.com (the "Yellowpages.com litigation"). *Id.* ¶¶ 39, 40. In the second wave, GeoTag filed suit against hundreds of defendants in the Eastern District of Texas (the "Texas litigation"). *Id.* ¶¶ 10, 12. Third, GeoTag filed counterclaims against Microsoft and Google in

Delaware (the "Delaware litigation"). *Id.* ¶ 12. The Fee Agreement contemplates that the majority of work on the Yellowpages.com and Delaware litigations was to be performed by other law firms while the Texas litigation and some ancillary work on the Yellowpages.com litigation was to be performed by MSF. *Id.* ¶ 14. However, this division of labor was disturbed when GeoTag allegedly asked MSF to perform different types of work on all three sets of cases. *Id.* ¶¶ 38–41. Believing itself to be underpaid for its work outside the scope of the Fee Agreement, MSF seeks damages relating to all three sets of cases. *Id.*

Even as MSF was working on the Texas litigation, the Yellowpages.com litigation, and the Delaware litigation, MSF alleges GeoTag was committing acts that impeded its ability to collect its attorney's fees. For example, MSF alleges that GeoTag hid the existence of settlement agreements so as to deprive MSF of its contingency fee on those cases. *Id.* ¶¶ 26–35. According to MSF, GeoTag even hired yet another law firm to help GeoTag hide those settlements from MSF. *Id.* ¶ 29.

As another example, MSF alleges that GeoTag traded monetary settlements for personal benefits, including trading claims against Nordstrom and Costco for the right to pitch Elizabeth Morgan's beauty products to those companies' buyers. *Id.* ¶ 34. MSF also believes that GeoTag misallocated costs despite clear examples outlined in the Fee Agreement. *Id.* ¶¶ 17–20. According to MSF, this action also deprived MSF of its fees. *Id.* MSF was allegedly harmed even further when GeoTag allegedly falsified expense reports that GeoTag submitted to MSF, causing MSF to pay money that it would have otherwise retained as fees. *Id.* ¶¶ 21–22. In an attempt to reconcile their immediate differences, GeoTag and MSF entered into an Interim Solution on April 15, 2013, just six months after the original Fee Agreement was signed. *Id.* ¶ 17.

Ultimately, MSF alleges that it was wrongfully terminated on November 7, 2013. MSF has also asserted that GeoTag intentionally delayed settlements to deprive MSF of its contingency fees on cases that should have otherwise settled. *Id.* ¶¶ 31, 42.

Based on the above allegations and more, MSF believes GeoTag breached the Fee Agreement and deprived MSF of fees totaling more than $25,000,000. *Id.* ¶ 36.

## APPLICABLE LAW

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must assume that "all well-pleaded facts are true and view[] those facts in the light most favorable to the plaintiff." *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."[1] *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The court must then decide whether those facts state a claim for relief that is plausible on its face. *Bowlby*, 681 F.3d at 219. "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## DISCUSSION

GeoTag has sought to dismiss multiple counts from MSF's Second Amended Complaint. First, GeoTag seeks to dismiss MSF's claim for tortious interference with a contract (Count 7). Second, GeoTag seeks to dismiss MSF's claim for fraud (Count 4) and subsequent claim for punitive damages resulting from that fraud (Count 8). Third, GeoTag requests that the Court dismiss MSF's alternative claim for quantum meruit (Count 3). Fourth, GeoTag requests that the

---

[1] In this case, the Court considers the Second Amended Complaint and the Fee Agreement, which was attached to GeoTag's Motion to Dismiss and referenced in the Second Amended Complaint.

Court dismiss MSF's claim for breach of contract for additional work (Count 5). Fifth, GeoTag seeks to dismiss MSF's claim for attorney's fees (Count 9). Sixth and finally, GeoTag seeks to dismiss MSF's claim for an accounting (Count 1). Each argument will be addressed in turn.

### A. Count 7: Tortious Interference with a Contract

"The elements of a cause of action for tortious interference with a contract are: (1) the existence of a contract subject to interference, (2) the occurrence of an act of interference that was willful and intentional, (3) the act was a proximate cause of the plaintiff's damage, and (4) actual damage or loss occurred." *Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex. 1995). "Texas jurisprudence has long recognized that a party to a contract has a cause of action for tortious interference against any third person (a stranger to the contract) who wrongly induces another contracting party to breach the contract." *Id.* at 794–95. The Texas Supreme Court has modified this principle to the extent that agents of a corporation can be held liable in tort for interference with the corporation's contracts if those agents "acted in a fashion so contrary to the corporation's best interests that [their] actions could only have been motivated by personal interests." *Id.* at 796. However, the basic tenet that "the defendant's intent must be to effect a breach of the contract" is still present. *Fluor Enters., Inc. v. Conex Int'l Corp.*, 273 S.W.3d 426, 443 (Tex. App.—Beaumont 2008, pet. denied).

MSF argues that Veenstra and Morgan acted in a fashion so contrary to GeoTag's best interests that their actions could only have been motivated by personal interests. Pl.'s Resp. at 17. GeoTag, on the other hand, believes that MSF's argument misses a more basic point: the alleged acts of Veenstra and Morgan show no intent to interfere with any provision of the Fee Agreement. Def.'s Mot. to Dismiss at 19–20. The Court agrees with GeoTag.

The Texas Supreme Court case of *Southwestern Bell Telephone Co. v. John Carlo Texas, Inc.* is instructive. 843 S.W.2d 470 (Tex. 1992). In *John Carlo*, the jury was asked to find whether a defendant had met the intent element of a tortious interference claim. *Id.* at 472. The plaintiff argued that the intent element could be found if the jury concluded that the telephone company-defendant intended to move its facilities. *Id.* The telephone company-defendant argued that the jury must find an intent to interfere with the contract, not just an intent to take a specific action such as moving its facilities. *Id.* The Texas Supreme Court agreed with the defendant and concluded that the trial court erred by missing the distinction between an intent to take a specific action and an intent to interfere with the contract. *Id.* The Court found it obvious that the defendant intended to move its facilities, but reasoned that "it does not follow . . . from [the defendant's] deliberate relocation of its facilities that it intended to interfere with [the plaintiff's] contract." *Id.* Accordingly, the Court concluded that the intent element is only met when the plaintiff shows that the defendant intended to interfere with the provisions of the contract. *Id.*

MSF misses this same distinction as addressed in *John Carlo*. MSF pleads facts alleging that Veenstra and Morgan—as agents of GeoTag—potentially, and intentionally, settled claims for something other than money, such as the right to pitch Morgan's beauty products to certain sellers. Second Am. Compl. ¶ 66. MSF alleges that this action was intentionally "designed to reduce the value of the patent litigation and thus diminish MSF's fees." Pl.'s Resp. at 17. GeoTag argues that this action does not show an intent to interfere with the contract because the contract does not force GeoTag to settle claims only for monetary damages or to maximize the value of the patent litigation. Def.'s Mot. to Dismiss at 19–20. The Court agrees. MSF has not pointed to (and the Court cannot find) any contractual obligation suggesting that GeoTag must

settle its claims for only monetary damages or that GeoTag must maximize the value of the patent litigation. As in *John Carlo*, even if GeoTag intended to take the specific action it took, it does not follow from the same that GeoTag intended to interfere with the Fee Agreement. As a result, the fact that Veenstra and Morgan may have exchanged potential settlements for something other than money does not show an intent to interfere with a contractual obligation from the Fee Agreement.

Accordingly, Count 7 for Tortious Interference with a Contract is **DISMISSED**.

### B. Count 4: Common Law Fraud and Fraudulent Inducement

GeoTag challenges MSF's fraud claims on three grounds. First, GeoTag argues that MSF's fraud pleadings do not meet the heightened pleading standards required by Federal Rule of Civil Procedure 9(b). Def.'s Mot. to Dismiss at 21. Second, GeoTag argues that MSF does not state a claim for common law fraud. *Id.* at 22. Third, GeoTag argues that MSF fails to state a plausible claim for fraudulent inducement. *Id.* at 22–23.

The elements of common law fraud and fraudulent inducement are "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009) (applying Texas law); *see also In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).

#### i. Federal Rule of Civil Procedure 9(b)

When fraud is alleged, Federal Rule of Civil Procedure 9(b) requires that a party "state with particularity the circumstances constituting fraud" but that "malice, intent, knowledge, and

other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To meet Rule 9(b)'s heightened standard, "a plaintiff must plead the time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009) (internal quotation marks and alterations omitted). "Given the elements of reliance and damages, pleading common law fraud with particularity demands the specifics of the false representation." *Id.* at 188–89.

In its Second Amended Complaint, MSF alleges multiple fraud claims that are subject to the Rule 9(b) standard. Second Am. Compl. ¶¶ 56–57. GeoTag argues that MSF fails to meet the heightened requirements of Rule 9(b). MSF points out that the Second Amended Complaint is rife with factual support for its fraud claims. In this respect, the Court agrees with MSF.

MSF makes a sufficient factual showing that meets the heightened Rule 9(b) standard. As an initial matter, the Court notes that GeoTag did not point to any specific deficiencies tied to any particular element of the fraud claims that require the Rule 9(b) standard. Instead, GeoTag summarily argues that MSF's allegations of fraud "indiscriminately lump all defendants together and fail to segregate the alleged wrongdoing of each defendant, fail to state these minimum requirements with particularity, and thus fail to provide Defendants with adequate notice of the nature and grounds of MSF's fraud claim." Def.'s Resp. at 6, Dkt. No. 52.

While the Court does not believe it necessary to outline each and every detail supporting each one of the six elements of fraud for each of the allegedly fraudulent acts asserted at this stage in the litigation, the Court notes that MSF's Second Amended Complaint is filled with examples showing the requisite specificity. Contrary to GeoTag's assertion, MSF does not indiscriminately lump all defendants together and MSF does segregate the alleged wrongdoing of

each defendant while stating the minimum requirements with particularity. *See, e.g.*, Second Am. Compl. ¶¶ 19, 21–22, 28–30, 34 & 42. However, this conclusion does not end the inquiry.

### ii. Common Law Fraud

GeoTag argues that MSF's claim for common law fraud should be dismissed because MSF "can recover in tort for a dispute based on a contract only if the duty breached is imposed by law" and because MSF has incurred only "economic damages resulting from a breach of contract." Def.'s Mot. to Dismiss at 22. MSF argues that specific misrepresentations by Veenstra, Morgan, and GeoTag violated duties imposed by law and caused damages that go beyond the benefit of the contractual bargain. Pl.'s Resp. at 19–21. According to MSF, these damages include the loss of other business MSF was forced to turn down while representing GeoTag. Second Am. Compl. ¶ 56; Pl.'s Resp. at 21. The Court agrees with GeoTag and concludes that the damages sought by MSF are breach of contract damages.

In distinguishing between an action arising under a contract and an action sounding in tort, the Texas Supreme Court announced the general rule that there must be an independent injury—separate and apart from the breach of contract—for the plaintiff to recover under the tort of common law fraud. *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). In other words, "[w]hen the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract." *Id.* at 494.

Here, MSF pleads no independent legal injury sounding in tort. Instead, MSF pleads lost profits from the business it otherwise would have obtained had MSF not represented GeoTag.[2]

---

[2] MSF's responsive briefing is wholly unclear about whether MSF seeks damages under a fraudulent inducement theory or a common law fraud theory. As the Texas Supreme Court has pointed out, the distinction is important. MSF's pleading suggests it is claiming lost profits under a fraudulent inducement theory, Second Am. Compl. ¶ 56, but its argument concerning damages intermingles facts alleging fraudulent inducement and facts alleging common law fraud.

9

Second Am. Compl. ¶ 56; Pl.'s Resp. at 20. These are consequential damages that are potentially available as indirect (but foreseeable) benefit-of-the-bargain damages. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 54 n.1 (Tex. 1998). These damages arise as a consequence of the alleged breach; not as an independent injury. *Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 901 (Tex. 2011). Therefore, in this case, the damages alleged stem from a contractual breach and are not recoverable under a common law fraud theory.

Having alleged no other damages under the common law fraud theory, MSF's claims for common law fraud in the Second Amended Complaint are **DISMISSED**.

### iii. Fraudulent Inducement

"Fraudulent inducement is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof." *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 277 (5th Cir. 2012). "That is, with a fraudulent inducement claim, the elements of [common law] fraud must be established as they relate to an agreement between the parties." *Id.* However, damages that stem from fraudulent inducement are not subject to the same independent injury requirement that is required in common law fraud. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998).

Turning to the disputed fraud element (the intent element), courts have found that "[s]light circumstantial evidence of fraud, when considered with the breach of promise to

---

For example, in its responsive briefing, MSF alleges that its lost profits were a result of "fraudulent conduct" occurring after the Fee Agreement had been signed, which suggests MSF is pleading damages stemming from common law fraud. Def.'s Mot. to Dismiss at 20. However in the next sentence (and without drawing a distinction for the Court), MSF claims damages stemming from a "fraudulent scheme" occurring before the Fee Agreement was signed. *Id.* at 21. These facts point toward a fraudulent inducement theory. Over the past 15 years, the Texas Supreme Court has revisited and refined the distinction ignored by MSF many times, and this missed distinction is critical to MSF's pleadings.

perform, is sufficient to support a finding of fraudulent intent" at the pleading stage. *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1034 (5th Cir. 2010) (citing Texas law) (internal quotation marks omitted). However, the allegations must still meet *Iqbal*'s pleading requirements and "rise above the level of a conclusory description." *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1034 (5th Cir. 2010).

GeoTag argues that MSF's fraudulent inducement claim should be dismissed at the pleading stage. GeoTag argues that because it partially performed the contract the "intent" element of fraudulent inducement cannot be met as a matter of law. Def.'s Mot. to Dismiss at 13. MSF argues that partial performance may be evidence of an intent to perform, but it is not a categorical bar to finding the intent element adequately pleaded. Pl.'s Resp. at 21. The Court agrees with MSF.

Partial performance is a factor to consider—not an absolute bar—in determining whether the intent element of fraudulent inducement is adequately pleaded. In *Shandong Yinguang Chemical Industries Joint Stock Co. v. Potter*, the Fifth Circuit (interpreting Texas law) considered the following alleged facts when determining whether the plaintiff had stated a plausible claim for relief under a fraudulent inducement theory: the long amount of time that had passed between the making of the allegedly fraudulent promise and the failure to perform, the history of interactions between the parties that showed a pattern of this type of behavior, the changed circumstances between the promise and breach, and the defendant's partial performance. 607 F.3d 1029, 1034 (5th Cir. 2010). In assessing these various facts, the Court in *Shandong* concluded that the plaintiff had not adequately pleaded fraudulent inducement, but it did not conclude or even insinuate that the defendant's partial performance was a dispositive factor to this finding. *Id.*

MSF alleges that GeoTag, Veenstra, and Morgan fraudulently induced MSF to enter into both the original Fee Agreement as well as the Interim Solution. Second Am. Compl. ¶ 56. As evidence of fraudulent inducement, MSF points to GeoTag's previous relationships with four other law firms, Second Am. Compl. ¶ 13, GeoTag's alleged history of terminating those law firms without payment, *id.* ¶ 13, and the short amount of time (less than six months) that passed between GeoTag's representations and its alleged failure to perform those promises, including GeoTag's alleged refusal to allocate costs as proposed, *id.* ¶¶ 17–19, GeoTag's alleged refusal to proportionally compensate the Texas cases based on settlements obtained in the Delaware litigation, *id.* ¶¶ 14, 25, the forced nature of the Interim Solution, *id.* ¶ 17, the allegedly falsified expense reports, *id.* ¶ 21, and the allegedly hidden settlement agreements, *id.* ¶¶ 26–31. While GeoTag's partial performance of the Fee Agreement may be one factor negating intent on the part of GeoTag, MSF pleads specific factual allegations that rise above the requisite level of "slight circumstantial evidence" and thus states a plausible claim for relief under *Iqbal*. *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1034 (5th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009)).

Accordingly, MSF has pleaded factual content allowing the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. GeoTag's motion to dismiss MSF's claim for fraudulent inducement is **DENIED**.

## C. Count 8: Punitive Damages

Under Texas law, punitive damages "may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of [punitive] damages results from . . . fraud." Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a); *id.*

§ 41.001(5). Here, MSF's fraudulent inducement claim is not dismissed, so MSF may still maintain a claim for punitive damages.

### D. Count 3: Alternative Count for Quantum Meruit

"Quantum meruit is an equitable remedy which does not arise out of a contract, but is independent of it." *MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 975 (5th Cir. 2014) (citing Texas law). "Generally, a party may recover under quantum meruit only when there is no express contract covering the services or materials furnished." *Id.*

GeoTag argues that the services rendered by MSF were covered by a contract, and therefore MSF's quantum meruit claim should be dismissed. Def.'s Mot. to Dismiss at 25. MSF argues that it can maintain a quantum meruit claim until an election of remedies is required. Pl.'s Resp. at 22. In response, GeoTag points out that MSF bargained away its right to elect remedies under the contract. Def.'s Mot. to Dismiss at 26. The Court agrees with GeoTag.

The case MSF relies on, *Celmer v. McGarry*, does not support MSF's position. 412 S.W.3d 691 (Tex. App.—Dallas 2013, pet. denied). In *Celmer*, an attorney and a client had a dispute about whether the parties had in fact entered into a contract covering the attorney's fees. *Id.* at 700. The attorney sought to recover attorney's fees under the contract if the contract existed, but sought to recover in quantum meruit if the contract did not exist. *Id.* at 708. While the Court of Appeals in Dallas noted that "a party to a contract may seek alternative relief under both contract and quantum meruit theories," *id.*, that statement presupposed the existence of a dispute concerning the existence of a contract. *Id.*

In the present case, neither party disputes the existence of the Fee Agreement.

Furthermore, GeoTag correctly points out that MSF and GeoTag bargained for the termination provisions in the Fee Agreement. The Fee Agreement states that if MSF is

13

terminated, GeoTag is obligated to pay MSF "the greater of (1) the contingency fees owed or (2) reasonable attorneys' fees and costs." Fee Agreement ¶ 8, Dkt. No. 45-1. Therefore the contract specifically covers the situation that occurred and the services furnished by MSF. *See Nagel v. Ky. Cent. Ins. Co.*, 894 S.W.2d 19, 21 (Tex. App.—Austin 1994, pet. denied) (upholding dismissal of quantum meruit claim where "the contracts specifically cover the services allegedly furnished").

Accordingly, for work performed that was within the scope of the Fee Agreement entered into by MSF and GeoTag, MSF's quantum meruit claim (Count 3) is **DISMISSED**. Work performed outside the scope of the Fee Agreement is still subject to MSF's quantum meruit claim (Count 6).

### E. Count 5: Breach of Contract for Additional Work

"A contingent fee contract for legal services must be in writing and signed by the attorney and client." Tex. Gov't Code § 82.065.

In its Second Amended Complaint, MSF alleges that "[t]he terms of the Fee Agreement were either modified by Defendants' request that MSF perform these additional duties, thus entitling MSF to its contingency fee of the net proceeds, or, in the alternative, the services were outside the scope of the Fee Agreement." Second Am. Compl. ¶ 41. GeoTag argues that MSF's claim is barred as a matter of law because any modification to the Fee Agreement must be signed by both parties. The Court agrees with GeoTag. Tex. Gov't Code § 82.065.

Accordingly, Count 5 for Breach of Contract for Additional Work is **DISMISSED**.

### F. Count 9: Attorney's Fees

Count 9 of the Second Amended Complaint states: "The Fee Agreement is a written contract. The work performed relating to the Yellowpages.com matter is either part of the Fee

Agreement or constitutes a separate claim for services. MSF is represented by the undersigned attorneys. MSF presented its claim to Defendants, but Defendants have not made any payment to MSF. MSF is entitled to recover its reasonable attorney's fees from Defendants in an amount to be determined at trial." Second Am. Comp. ¶ 70.

GeoTag's motion to dismiss MSF's claim for attorney's fees is **DENIED.** The Court, however, will treat Count 9 as a part of MSF's breach of contract claim (Count 2) and MSF's claim for quantum meruit for additional work (Count 6).

### G. Count 1: Accounting

"An equitable accounting is proper when the facts and accounts presented are so complex adequate relief may not be obtained at law." *T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 717 (Tex. App.—Houston (14th Dist.) 2002, pet. denied); *see also Williams v. Wells Fargo Bank, N.A.*, 560 Fed. App'x 233, 243 (5th Cir. 2014) (quoting *T.F.W. Mgmt.*). "When a party can obtain adequate relief at law through the use of standard discovery procedures, such as requests for production and interrogatories, a trial court does not err in not ordering an accounting." *T.F.W. Mgmt., Inc.*, 79 S.W.3d at 717–18 (Tex. App.—Houston (14th Dist.) 2002, pet. denied).

Here, MSF requests (1) details and documentation on all settlement amounts; (2) all costs incurred necessary to calculate a net recovery—with backup documentation to prevent fraud in the calculation of the costs; (3) a tracing of the receipt, deposit, and distribution of all settlement funds; (4) the present location of all settlement funds; and (5) any additional information necessary. These types of requests are not extremely complex and can be obtained through the use of standard discovery procedures.

Accordingly, Count 1 of MSF's Second Amended Complaint is **DISMISSED**.

## CONCLUSION

Fundamentally, MSF has a breach of contract action against its former client. The issues raised in this Rule 12(b)(6) motion are for the most part ancillary. Nevertheless, the Court has considered each and every count alleged. For the reasons discussed above, Count 1, Count 3, Count 5, and Count 7 are DISMISSED. The remaining counts (for breach of contract, attorney's fees as to such breach, and fraudulent inducement with the possibility of punitive damages for such fraudulent inducement) state a plausible claim for relief and remain properly before the Court to the extent discussed above, as well as to the extent addressed in the Court's prior order dated October 2, 2014.

**So ORDERED and SIGNED this 31st day of March, 2015.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE