**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| MOUNT SPELMAN & FINGERMAN, P.C.,<br><br>*Plaintiff*,<br><br>v.<br><br>GEOTAG, INC., JOHN W. VEENSTRA AND ELIZABETH A. MORGAN, ET AL.<br><br>*Defendants*. | § | Civil Action No. 2:14-cv-00013<br><br>**LEAD CASE** |
| GEOTAG, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>MOUNT SPELMAN & FINGERMAN, P.C.,<br><br>*Defendant*. | § | Civil Action No. 2:14-cv-00558<br><br>**CONSOLIDATED CASE** |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Mount Spelman & Fingerman, P.C.'s ("MSF") breach of contract claim against Defendants GeoTag, Inc., John W. Veenstra and Elizabeth A. Morgan (collectively, "GeoTag"). Each party filed a trial brief. ("MSF's Trial Brief," Dkt. No. 119; "GeoTag's Trial Brief," Dkt. No. 120.) The parties also filed a joint statement of disputed and undisputed facts. ("Joint Statement," Dkt. No. 121.) On August 27, 2015, the Court held a bench trial on the breach of contract issue. Dan Mount, an MSF attorney, testified as the sole live witness for Plaintiff. John Veenstra, CEO of GeoTag, testified as the sole live witness for Defendant. Such bench trial took place pursuant to the parties' joint agreement ("the Settlement

Agreement," dated June 24, 2015) whereby the scope of the trial was limited, and both sides agreed to be bound by this Court's decision and waived any right of appeal. This Memorandum Opinion and Order constitutes the Court's findings of facts and conclusions of law pursuant to FRCP 52. The Court has considered the admissible evidence and parties' briefing. For the following reasons, the Court finds that MSF is entitled to recover damages for breach of contract, as set forth herein.

## BACKGROUND

This contract dispute arises out of a written Fee Agreement ("the Fee Agreement") entered into on September 21, 2012, between MSF, a law firm, and GeoTag, its former client. The Fee Agreement was signed by Kevin Pasquinelli on behalf of MSF and by John Veenstra on behalf of GeoTag. The Fee Agreement was drafted by MSF and defines the scope of the representation that MSF would afford GeoTag. GeoTag hired MSF as part of its efforts to enforce GeoTag's U.S. Patent No. 5,930,474, which deals primarily with store locator technology used on websites.

GeoTag, through various attorneys, including MSF, filed suit against over 400 defendants at various locations within the United States seeking to enforce its patent rights. GeoTag sued over 350 such defendants in Texas federal courts alone. As these cases proceeded, a litany of settlements and dismissals resulted. On November 8, 2013, GeoTag fired MSF as its counsel.

The Fee Agreement specifically addresses such "Termination of Relationship" as follows:

> In the event of discharge you will be obligated to pay Mount, Spelman & Fingerman the greater of (1) the contingency fees owed or (2) reasonable attorneys' fees and costs.

> Contingency fees owed mean the percentage calculated as per section 3 (rates and charges) of any existing settlement minus reasonable costs for your ongoing enforcement efforts.
>
> Fees and costs include all services provided and all reasonable costs advanced by Mount, Spelman & Fingerman. The fee shall be determined by considering the following factors: (a) the actual number of hours expended by Mount, Spelman & Fingerman's legal personnel in performing legal services; (b) the hourly rates of Mount, Spelman & Fingerman at the time each hour of work was performed; (c) the extent to which Mount, Spelman & Fingerman's services contributed to the result obtained; (d) the amount of the fee in proportion to the value of the services performed; (e) the amount of recovery obtained; (f) time limitations imposed on Mount, Spelman & Fingerman by you or by the circumstances; and (g) the experience, reputation, and ability of Mount, Spelman & Fingerman's legal personnel.
>
> (Fee Agreement ¶8.)

After termination, MSF initiated legal action contending that it was owed substantial sums of money under the Fee Agreement, both as legal fees and recoverable costs and expenses. It is undisputed that, to date, MSF has received $397,021.55 in contingency fees paid. (Joint Statement at 2.) On June 24, 2015, and after a lengthy mediation, GeoTag and MSF entered into the above noted Settlement Agreement which provides that MSF waived all claims and causes of action against GeoTag except for its breach of contract claim under the Fee Agreement. (*Id.*) The Settlement Agreement also provides that MSF's recovery of damages, if any, is limited to not more than $1.8 million, and all parties waived their right to recover attorneys' fees incurred in the present litigation. (*Id.*)

## LEGAL STANDARD

"When interpreting and enforcing attorney-client fee agreements, it is not enough to simply say that a contract is a contract. There are ethical considerations overlaying the contractual relationship." *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 560 (Tex. 2006)

(internal quotation marks omitted). "Public policy strongly favors a client's freedom to employ a lawyer of his choosing and…to discharge the lawyer during the representation for any reason or no reason at all." *Id.* at 562. Nonetheless, attorneys have valid competing interests in timely compensation for work performed and results obtained. *Id.* at 563. "Thus, attorneys are entitled to protection from clients who would…avoid duties owed under contract." *Id.*

With such guidance in mind, the Court will focus on the applicable provisions of the Fee Agreement. "In construing contracts, we must ascertain and give effect to the parties' intentions as expressed in the document." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000).

## DISCUSSION

### 1. Summary of Evidence

MSF contends that it is entitled to recover reasonable attorneys' fees and costs under the Fee Agreement because such amount is greater than contingency fees owed. (MSF's Trial Brief at 16.) MSF billed 5,805.97 hours on GeoTag's patent litigation with a final value calculated at $2,171,488. (PX3, PX4.) After subtracting $397,021, as fees already paid, MSF argues that the total amount owed under the Fee Agreement formula is $1,774,467. (MSF's Trial Brief at 16.)

GeoTag contests the reliability of MSF's final number of hours billed. (GeoTag's Trial Brief at 14–15.) Mr. Mount testified that MSF's Hourly Fee Summary by Attorney (PX3), Detailed Attorney Pre-Bill Worksheet (PX4), and resulting calculations included hours spent on cases where there was not a net recovery to GeoTag. Mr. Mount also testified that such time entries and calculations included hours spent on cases that were tolled with no monetary recovery resulting to GeoTag.

Additionally, GeoTag alleges that MSF altered time sheets and padded billing entries after its termination. For example, GeoTag pointed to time entries in which Mr. Mount claims to have spent over 160 hours in mediations throughout March 2013 (PX4), even though Mr. Veenstra testified that Mr. Mount participated in such mediations for only one week. GeoTag also pointed to time entries where MSF incorrectly entered "2015" rather than "2013." (PX4.) Finally, GeoTag identified inconsistencies in time entries for Mr. Pasquinelli. Specifically, MSF had at one point listed Mr. Pasquinelli as working 10 hours per day for every day in October 2013—a month in which Mr. Pasquinelli missed work while suffering from prostate cancer—and later reconstructed such time entries to adjust for the mistake. In his testimony, Mr. Mount admitted that he entered a multitude of time entries in question as after-the-fact reconstructions based on estimations.

GeoTag also contests the sufficiency of MSF's performance. (GeoTag's Trial Brief at 19.) For example, Mr. Veenstra discussed the series of mediations in March 2013 during which he hired another attorney to represent GeoTag after a disagreement caused Mr. Mount to leave the mediations. Mr. Veenstra further testified that MSF did not staff the GeoTag matters appropriately to meet discovery obligations and cited this as a significant factor contributing to MSF's eventual termination. However, Mr. Veenstra later admitted that, in some cases, he faulted Mr. Mount for not completing discovery tasks assigned to an attorney from a different firm.

Each party also addressed contingency fees owed as the alternative method of calculating damages under the Fee Agreement. (MSF Trial Brief at 9–10; GeoTag Trial Brief at 2–7.) The parties strongly disagreed as to the number of settlement agreements obtained by GeoTag that should be included in such calculation. (Joint Statement at 3–4.) GeoTag argued that the only

settlement agreements that should be included in the contingency fee calculation were those that were mutually executed by GeoTag and the settling defendant on or before November 8, 2013—the date that GeoTag terminated MSF. (GeoTag Trial Brief at 2.) In contrast, MSF argued that GeoTag improperly hired additional counsel to control and delay formal execution of many valuable settlement agreements so GeoTag could then wrongly terminate MSF before the agreements became final. (MSF Trial Brief at 6–8.) MSF points to about $4 million dollars received by GeoTag from settlement agreements signed from November 8, 2013, through November 22, 2013. (Joint Statement at 3.) The parties also disagreed as to whether to include two large settlements GeoTag entered with parties not specifically identified in the Fee Agreement, but which allegedly covered certain indemnified parties actually listed in the Fee Agreement. (Joint Statement at 6.)

Finally, GeoTag accused MSF of claiming its paralegal expenses as a "cost" under the Fee Agreement rather than as part of MSF's fee charged. (GeoTag Trial Brief at 9–10.) MSF conceded to over-billing in that regard and agreed to rescind a portion of the contested charges.

**2. Findings of Fact and Conclusions of Law**

Under the Fee Agreement, GeoTag's election to discharge MSF on November 8, 2013, gave rise to a contractual obligation to pay MSF the greater of (1) contingency fees owed; or (2) reasonable attorneys' fees and costs. The Court holds that GeoTag has not fulfilled this obligation. Additionally, the Court finds that the greater amount of compensation provided for under the Fee Agreement lies in the calculation of reasonable attorneys' fees and costs. Based on the evidence discussed above, the Court finds that MSF is entitled to recover compensation equal to the amount of hours MSF attorneys worked multiplied by their regular hourly rates, added to

any costs advanced by MSF. The fee already paid by GeoTag to MSF will be subsequently deducted.

MSF asserts that total time billed on the GeoTag litigation was 5,805.07 hours valued at $2,171,488. The Court finds that MSF cannot recover reasonable attorneys' fees for cases in which GeoTag received no monetary compensation. Further, additional questions raised by allegations of altered time sheets and padded billing entries, as well as disputes relating to the quality of MSF's performance, taken together, warrant a downward adjustment of MSF's proposed amount of reasonable attorneys' fees. The Court believes that a reasonable and equitable adjustment is found by reducing MSF's claimed amount by one-third. The only question that remains is whether MSF advanced reasonable costs for which it has not recovered. The Court finds that the firm has not.

**CONCLUSION**

The Court holds that Defendant GeoTag breached the Fee Agreement after terminating Plaintiff MSF, and MSF is thus entitled to recover damages under the contract. However, the Court finds that both parties have acted in ways contrary to the clear requirements of the employment agreement between them. Both parties have unclean hands in this dispute. Therefore, the Court imposes a downward equitable adjustment of one-third on MSF's total amount of recovery, which reduces such total recovery to $1,447,658.67. MSF has already received $397,021.55. Consequently, it is **ORDERED** that MSF have and recover from GeoTag the total sum of $1,050,637.12. Further, the Court is aware that, presently, $1,999,500 of funds applicable to this dispute are now being held in the Registry of this Court. Accordingly, the Clerk of this Court is **ORDERED** to pay over and deliver the sum of $1,050,637.12 from such funds to MSF, as complete satisfaction for the award made herein. Thereafter, the Clerk shall pay over

and deliver the remaining balance of such funds, being $948,862.88, to GeoTag, against which sum MSF shall have no claim. Thereafter, the Clerk shall close this case.

**So ORDERED and SIGNED this 14th day of October, 2015.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE